UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MATTHEW TASSONE,

    Plaintiff,

v.

JUDGE ELIZABETH GILL, *et al.*,

    Defendants.

Case No. 2:19-cv-1683
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Matthew Tassone's ("Plaintiff") Objection (ECF No. 4) to the Magistrate Judge's Report and Recommendation (ECF No. 3). For the reasons that follow, the Court **ADOPTS** the Report and Recommendation (ECF No. 3) and **OVERRULES** Plaintiff's Objection (ECF No. 4).

### I.

#### A. Factual Background

This action arises out of an ongoing custody dispute between Plaintiff and Zephynia Tassone ("Ms. Tassone"). Plaintiff, proceeding *pro se*, filed a Complaint on May 1, 2019 alleging that "Judicial Officers of the Franklin County Court of Common Pleas, Division of Domestic Relations and their coconspirators . . . systematically Deprive the Citizens of Franklin County of Due Process" through a "scheme involving fraud and the use of child hostages." (Compl. ¶ 2, ECF No. 2). Specifically, Plaintiff alleges that Ms. Tassone, acting together with Judge Elizabeth Gill ("Judge Gill"), John C. Ruiz-Bueno III ("Mr. Ruiz-Bueno"), Magistrate David Black ("Magistrate Black"), and Edward F. Whipps ("Mr. Whipps") conspired to conceal the whereabouts of Plaintiff's daughter from him beginning on November 28, 2017. (*Id.*).

Ms. Tassone filed for divorce on November 30, 2017. (*Id.* ¶ 3). Plaintiff alleges that Ms. Tassone subsequently failed to comply with the terms of a December 1, 2017 Temporary Mutual Restraining Order enjoining "each spouse from concealing the whereabouts of the minor children of the parties" while divorce proceedings are ongoing. (*Id.* ¶ 3). Plaintiff contends that on December 6, 2017, he received an email from Ms. Tassone's lawyer, Mr. Ruiz-Bueno, stating his "client is not interested in withholding the child but based on the circumstances and the parties' interrelations she fears in the absence of agreement your client would withhold the client from her." (*Id.* ¶ 5). According to Plaintiff, Mr. Ruiz-Bueno also indicated that he and Ms. Tassone "would only reveal the specific whereabouts of the minor child once the court ordered a parenting time schedule." (*Id.* ¶ 6). Plaintiff alleges that sometime in November or December 2017, Mr. Whipps—another lawyer employed by Ms. Tassone—advised Ms. Tassone not to reveal the location of the minor child until she secured a court order for parenting time. (*Id.* ¶ 7).

Plaintiff filed a Motion for Emergency Custody and appeared in the Franklin County Court of Common Pleas Domestic Relations Division on December 20, 2017. (*Id.* ¶ 14). Plaintiff alleges that, at the hearing, Judge Gill "directed" the parties "to continue the proceedings outside of the presence of Judge Gill, the court, and off of the record in conference rooms adjacent to the courtroom." (*Id.* ¶ 17). In Plaintiff's view, Judge Gill "functionally refused to hear [Plaintiff's] Motion, effectively denying [him] access to the courts." (*Id.*). Moreover, Plaintiff alleges that "Judge Gill did, in furtherance of a conspiracy to deny [Plaintiff] Due Process, allow Mr. [Ruiz]-Bueno to chiefly draft the court order as responsive to [his] then motion for emergency custody." (*Id.* ¶ 18). According to the Complaint, Judge Gill informed Plaintiff that it was "standard customary practice" for the parties to attempt to resolve a motion for emergency custody privately before proceeding to a hearing. (*Id.* ¶ 24). Plaintiff claims this "standard customary practice" is

actually part of the Defendants' conspiracy of "taking, concealing, and withholding [the] non-conspiring party's child." (*Id.* ¶ 28).

On November 30, 2017, Mr. Ruiz-Bueno filed a motion for full psychological evaluation of the parties. (*Id.* ¶ 51). Plaintiff alleges that prior to May 2018, the guardian ad litem informed Plaintiff that "after having ***privately*** discussed the matter with Mr. Bueno, Mr. Bueno will be presenting his Motion for Psychological Evaluation as a motion for custodial evaluation, not psychological evaluation." (*Id.*) (emphasis added). Plaintiff further claims that Magistrate Black stated: "[u]nder direct questioning by the court, Mr. Bueno indicated that he was seeking a custodial and not a psychological evaluation." (*Id.* ¶ 66). In Plaintiff's view, this shift from a "psychological evaluation" to a "custodial evaluation" is indicative of a scheme among "lawyers and judicial officers of [the] court [to] routinely disguise requests for psychological evaluations as requests for a 'custodial evaluation, not a psychological evaluation.'" (*Id.* ¶ 61).

Plaintiff seeks: (1) declaratory relief that the Defendants' actions violated Plaintiff's Fourteenth Amendment rights, (2) declaratory relief that said schemes violate the Constitution, (3) declaratory relief that Mr. Ruiz-Bueno violated Plaintiff's Fourteenth Amendment rights, (4) $100,000 in damages against Mr. Ruiz-Bueno, (5) declaratory relief that the lawyers violated Plaintiff's Fourteenth Amendment rights, (6) $100,000 in damages against Ms. Tassone, (7) $100,000 in damages against Mr. Whipps, and (8) attorney fees and costs. (*Id.* ¶ 90).

**B. Procedural History**

Plaintiff initiated the instant action on May 1, 2019, seeking relief pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiff's First, Fourth, Ninth, and Fourteenth Amendment rights. (ECF No. 2). On that same day, the Magistrate Judge issued a Report and Recommendation recommending that: (1) Plaintiff's Motion for Leave to Proceed *in forma*

*pauperis* be **GRANTED**, and (2) Plaintiff's Complaint be **DISMISSED** for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(a)(3). (ECF No. 3). On May 15, 2019, Plaintiff filed an Objection to the Report and Recommendation. (ECF No. 4).

## II.

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342–343 (1948)). Because a nonpaying litigant "lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," 28 U.S.C. § 1915(e) provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
>     (A) The allegation of poverty is untrue; or
>
>     (B) The action or appeal—
>
>         (i) If frivolous or malicious;
>
>         (ii) fails to state a claim on which relief may be granted; or
>
>         (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). Similarly, 28 U.S.C. §1915(A) requires courts to screen complaints to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—is frivolous, malicious, or fails to state a claim upon which relief may be granted."

The same "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under [28 U.S.C. § 1915(e)(2) and 28 U.S.C. §1915(A)] because the relevant statutory language tracks the language of Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–471 (6th Cir. 2010). Thus, the Court must construe the complaint in the light most favorable to the

4

plaintiff and determine whether the factual allegations present a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff's complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. In other words, a complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). However, "[p]ro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be construed liberally." *Garrett v. Belmont County Sheriff's Dept.*, 374 F. App'x 612, 614 (6th Cir. 2010) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).

### III.

The Report and Recommendation suggests that Plaintiff's Complaint contains several fatal flaws. (R&R at 4, ECF No. 3). Specifically, the Report and Recommendation found that Plaintiff's claims are either fully or partially barred by: (1) failure to state a claim, (2) the *Rooker-Feldman* Doctrine, (3) judicial immunity, and (4) limitations on federal jurisdiction in domestic relations matters. (*Id.* at 4–6). The Court will first consider whether Plaintiff adequately pleaded a claim pursuant to the pleading standards articulated in *Iqbal/Twombly*.

To plead a cause of action under 42 U.S.C. § 1983, a plaintiff must sufficiently allege two elements: (1) the "violation of a right secured by the Constitution and laws of the United States,"

and (2) the "deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To act under the color of state law, a defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). Generally, a defendant is acting under the color of state law "when he abuses the position given to him by the State." *Id.* (citing *Monroe v. Pape*, 365 U.S. 167, 172 (1961) (overruled in part on other grounds)).

The Report and Recommendation recommends that Plaintiff's claims against Mr. Ruiz-Bueno and Mr. Whipps should be dismissed because "he has not asserted a cognizable federal cause of action against the lawyers." (R&R at 5). Plaintiff objects that he has "pleaded facts in his initial complaint establishing state action by John C. Ruiz-Bueno III, Edward F. Whipps, and Zephynia S. Tassone[,] as contemplated in the 14th Amendment to the Constitution of the United States & 42 U.S.C. [§] 1983." (Pl.'s Obj. at 16, ECF No. 4). In Plaintiff's view, these facts are "sufficient to survive an action for dismissal." (*Id.*).

This Court agrees with the Magistrate Judge. Assuming, *arguendo*, that Plaintiff can satisfy the first prong, his claims against Mr. Ruiz-Bueno, Mr. Whipps, and Ms. Tassone fail on prong two. In *Polk County v. Dodson*, 454 U.S. 312, 318 (1981), the Supreme Court stated: "[i]t is often said that lawyers are 'officers of the court.' But the Courts of Appeals are agreed that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." Accordingly, Mr. Ruiz-Bueno and Mr. Whipps did not act under the color state law by representing Ms. Tassone in the emergency custody proceedings. In addition, as a private party, Ms. Tassone did not act under the color of

6

state law during the parties' child custody dispute.[1]  As a result, Plaintiff's § 1983 claims against Mr. Ruiz-Bueno, Mr. Whipps, and Ms. Tassone fail under § 1915(e)(2).

Plaintiff also fails to state a claim upon which relief can be granted against Judge Gill and Magistrate Black.  In his Objection, Plaintiff accurately notes that "[s]ection 1983 now implicitly recognizes that declaratory relief is available against judicial officers." *Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016).  However, even if Plaintiff can establish that: (1) Judge Gill and Magistrate Black acted under the color of state law, and (2) they are not entitled to judicial immunity, his Complaint does not assert a plausible constitutional violation.

As noted in the Report and Recommendation, "[a]t base, [Plaintiff] alleges that Judge Gill, Magistrate Judge Black . . . engaged in a conspiracy 'to systematically deprive the citizens of Franklin County of Due Process' through 'fraud' and 'the use of child hostages.'"  (R&R at 2) (*see generally* Compl.).  "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985).  No express agreement between the conspirators is necessary to find a civil conspiracy. *Id.* at 944.  In fact, "[e]ach conspirator need not have known all of the details of the illegal plan of all of the participants involved.  All that must be shown is that there was a single plan, that the alleged

---

[1] "The principal inquiry in determining whether a private party's actions constitute 'state action' under the Fourteenth Amendment is whether the party's actions may be 'fairly attributable to the state.'" *Wolotsky v. Huhn*, 960 F. 2d 1331, 1335 (6th Cir. 1992) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  The Supreme Court has identified three tests to determine whether a private party's actions are fairly attributable to the state: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. *Id.* at 1335.

Here, Plaintiff alleges no facts to suggest that Ms. Tassone exercised powers which are traditionally reserved to the state; acted under the coercive power or signification encouragement of the state; or maintained a sufficiently close nexus with the state such that her actions can be fairly treated as those of the state itself.  Consequently, Ms. Tassone is not a state actor for § 1983 purposes.

coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.*

Here, Plaintiff raises three facts in support of his civil conspiracy claim. First, Plaintiff alleges that Judge Gill directed the parties to negotiate off the record when Plaintiff appeared in court for his emergency custody hearing. (Compl. ¶ 17). Plaintiff points out that Judge Gill stated: "[s]tandard customary practice would be both attorneys checking in to advise me that they are/were attempting to resolve the *Motion* <u>before</u> proceeding to hearing." (Exhibit 7 at 2, ECF No. 2) (emphasis in original). Second, Plaintiff claims that Judge Gill permitted opposing counsel to draft a proposed custody order. (Compl. ¶ 18). Finally, Plaintiff alleges that Magistrate Black improperly reframed Plaintiff's psychological evaluation as a custodial evaluation. (*Id.* ¶ 66). According to Plaintiff, the "standard customary practice" referenced by Judge Gill was actually an unlawful agreement between Defendants to "tak[e], concea[l], and withhol[d] . . . the non-conspiring party's child" and then deny "the non-conspiring party access to the courts by forcing the non-conspiring party into proceedings which resemble forced negotiations." (*Id.* ¶ 28).

Taking Plaintiff's facts as true, he has not asserted sufficient facts to support a plausible civil conspiracy claim. For one, Plaintiff provides no evidence to suggest that Judge Gill engaged in unlawful conduct by encouraging the parties to negotiate in a child custody dispute. Nor does Plaintiff indicate why permitting Mr. Ruiz-Bueno to draft a proposed custody order is unlawful. Lawyers routinely draft proposed orders for the Court's review. Furthermore, Plaintiff signed the very order in question with the assistance of counsel—precluding any argument that Mr. Ruiz-Bueno acted unilaterally. (Exhibit 5 at 2, ECF No. 2). Similarly,

8

Plaintiff provides no evidence to support his contention that Magistrate Black acted unlawfully by allegedly recategorizing a psychological evaluation as a custodial evaluation.

Finally, Plaintiff's Complaint lacks sufficient facts to infer that Defendants acted in furtherance of a single plan. For instance, Plaintiff draws no connection between Judge Gill and Magistrate Black, other than to note their actions collectively establish "a pattern and practice of abuse and Due Process Deprivations against a multitude of citizens of Franklin County, OH." (Compl. ¶ 50). Accordingly, Plaintiff's claims against Judge Gill and Magistrate Black are not sufficiently plausible to sustain a § 1983 civil conspiracy.

As Plaintiff fails to assert a plausible constitutional claim pursuant to § 1983, the Court **DIMISSES** his Complaint for failure to state a claim upon which relief can be granted.

### IV.

Because Plaintiff fails to state a claim upon which relief can be granted pursuant to § 1915(e)(2), the Court need not consider the *Rooker-Feldman* Doctrine, judicial immunity, or the domestic relations exception to federal jurisdiction.

### V.

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation (ECF No. 3) and **DISMISSES** Plaintiff's Objection (ECF No. 4). The Court **DISMISSES** Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to § 1915(e)(2).

**IT IS SO ORDERED.**

5-30-2019
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF-UNITED STATES DISTRICT JUDGE**